IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, <br> TRUCK INSURANCE EXCHANGE, <br> FIRE INSURANCE EXCHANGE, <br> MID-CENTURY INSURANCE COMPANY, <br> and FARMERS NEW WORLD LIFE <br> INSURANCE COMPANY, <br><br> **Plaintiffs,** <br><br> vs. <br><br> **ANDREW JASPER** <br>     52 Chestnut Avenue <br>     St. Louis, Missouri 63119 <br><br> -and- <br><br> **JASPER INSURANCE AGENCY, LLC** <br> **Registered Agent for Service of Process:** <br>     Andrew Ray Jasper <br>     916 Bellstone Road <br>     Saint Louis, Missouri 63119 <br><br> **ELEVATED INSURANCE GROUP, LLC** <br> **Registered Agent for Service of Process:** <br>     Mark A. Mulchek <br>     120 South Central Avenue, Suite 1800 <br>     Saint Louis, Missouri 63105 <br><br> **Defendants.** | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively, "Plaintiffs" or "Farmers") allege as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiffs Mid-Century Insurance Company and Farmers New World Life Insurance Company are foreign corporations registered to do business in the State of Missouri.

2. Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange are interinsurance exchanges organized under California law.

3. Plaintiffs were parties to an Agent Appointment Agreement with Defendant Andrew Jasper.

4. Defendant Andrew Jasper is an individual who currently resides at 52 Chestnut Avenue, St. Louis, Missouri 63119.

5. Defendant Jasper Insurance Agency, LLC, ("Jasper Agency") is a limited liability corporation organized under the laws of the State of Missouri that had a principal place of business at 10425 Old Olive Street Road, St. Louis, Missouri 63141.  Upon information and belief, Defendant Andrew Jasper is the sole Member of Jasper Insurance Agency.

6. Defendant Elevated Insurance Group, LLC ("Elevated Insurance") is a limited liability corporation organized under the laws of the State of Missouri with a principal place of business at 10425 Old Olive Street Road, Suite 201, St. Louis, Missouri 63141.

7. Pursuant to 28 U.S.C. §§ 1331, 1367 and 1391(b), jurisdiction and venue are proper in this Court.

**Allegations Common to All Counts**

**The Agreements**

8. On or about December 20, 2017, Farmers and Jasper entered into an Agent Appointment Agreement (the "Agreement") which became effective on February 1, 2018,

whereby Jasper accepted appointment by Farmers as an agent of and for Farmers in the State of Missouri to sell insurance for Farmers. A copy of the Agreement is attached as **Exhibit A**.

9.  Pursuant to paragraph E.4., the Agreement states that it can be terminated immediately by Farmers for, among other things, the following:

    a.  "fraud … in connection with the Agency" or

    b.  "[m]isrepresentation in connection with the Agency that is material to the operation of the Agency or [Farmers]" or

    c.  "[c]onduct that is disparaging of or detrimental to [Farmers]."

10. Pursuant to paragraph K.3. of the Agreement, Jasper agreed that, upon termination of the Agreement he would transfer and assign all of his interests under the Agreement, including telephone numbers and leased or rented office locations, to Farmers.

11. Pursuant to paragraph K.4. of the Agreement, Jasper agreed "[f]or a period of one year following the effective date of termination of [the] Agreement, to neither directly nor indirectly in any manner solicit, accept, or service, … the insurance business of any of [Farmers'] policyholders of record in the Agency as of the effective date of termination."

12. Pursuant to paragraph L.2. of the Agreement, Jasper acknowledged that all information pertaining to policyholders and expirations are the confidential property of Farmers and agreed that such information would not be used or divulged in any way detrimental to Farmers and would be returned to Farmers upon termination of the Agreement.

**Investigation of Falsified Records and Termination of Contract**

13. In or around March 2021, as a result of an audit, the Jasper Agency was found to have uploaded 23 fictitious documents to support the Homeowner discount for Farmers' insureds.

14. On or about July 8, 2021, Jasper was presented with the findings from the March 2021 investigation.

15. At that time, Jasper stated that he had implemented changes within his agency and trained his staff to prevent any similar future occurrences.

16. In or around November 2021, as the result of a separate audit at the Jasper Agency, Farmers discovered that a high percentage of insureds serviced by Jasper were getting discounts in connection with duplicate documents.

17. On or about December 8, 2021, Jasper was interviewed in connection with the investigation.

18. The investigation revealed that the Jasper Agency submitted at least 15 fabricated and/or unacceptable documents to support Good Student discounts for 15 insureds, including two of Jasper's relatives.

19. The investigation further revealed that between January 2021 and November 2021, Jasper and an employee voided at least 41 new business check premium payments, totaling $48,025.85. In 23 of those instances, the insured had coverage for an average of 14 days before Farmers received any payment.

20. On April 27, 2022, Farmers terminated the Agreement immediately because an investigation revealed that Jasper and/or his employees submitted fabricated and unacceptable documents in support of policy discounts in violation of paragraphs E.4.a., E.4.d., and E.4.f. among others. Additionally, Jasper and/or his employees issued policies without the required new business down payment.

21. On April 28, 2022, in accordance with paragraphs K and L of the Agreement, Farmers demanded the return of all files of Farmers' insureds, the transfer and assignment of the

telephone numbers utilized by Jasper, and reminded Jasper of his obligations under Paragraph K.4. of the Agreement not to, for a period of one year following the termination of the Agreement, either directly or indirectly, solicit, accept or service the insurance business of any Farmers' policyholder of record in agency as of the date of termination of the Agreement.

**Misappropriation of Farmers' Information**

22.     Following the start of the investigation into Jasper's activity in November 2021 and prior to the termination of the Agreement on April 27, 2022, Jasper accessed Farmers' secure computer system to run and print various reports on insureds from the Jasper Agency for reasons unrelated to his servicing of the insured by and for Farmers.  By way of example:

   a.   On December 6, 2022, Jasper ran multiple reports titled "Accounts by Inception with Annual Premium," which identified all policies serviced by Jasper by inception date, account type, account status, the policy's annual premium, years active, the lead source, the line of business, and customer contact information.

   b.   On December 8, 2022, Jasper ran another "Accounts by Inception with Annual Premium" report.

   c.   On December 28, 2022, Jasper ran a report titled "Accounts by 21st Century CSA," which consisted of all accounts serviced by Jasper.

   d.   In or around March and April 2022, Jasper accessed the "Account Summary Personal" reports for hundreds of specific accounts, which identified all of the activity in each account.

23.     These reports consisted of highly confidential policyholder information, including customer contacts, policy numbers, policy details, pricing, quotes, premium information, policy expiration dates, and other confidential and proprietary company information.

24.     None of the information referenced in paragraph 22 was returned to Farmers at the time it terminated the Agreement.

**Cease and Desist Letters**

25. On or around June 2, 2022, Farmers learned that Jasper was soliciting Farmers' insureds to his new company, Elevated Insurance, in direct violation of his contractual commitments to Farmers.

26. Upon information and belief, Jasper is using Farmers' confidential, proprietary, and trade secret information to solicit and service Farmers' policyholders to leave Farmers.

27. On or about June 3, 2022, Farmers issued a cease and desist letter to Jasper demanding the transfer and assign of the telephone number and again reminding Jasper of his obligations not to solicit, accept or service the insurance business of any Farmers' policyholder of record in the agency as of the date of termination of the Agreement.

28. In violation of paragraph K. 3. of the Agreement, Jasper has refused to transfer and assign his telephone number to Farmers.

29. In violation of the Agreement, Jasper has refused to return to Farmers all of its confidential and proprietary information and has used such information in a way that is detrimental to Farmers, including soliciting Farmers' policyholders to other carriers.

30. Since at least April 27, 2022, Jasper has directly or indirectly solicited, accepted, and/or serviced the insurance business of Farmers' policyholders in violation of the Agreement.

31. Jasper has solicited, accepted, and/or serviced on behalf of his new agency, Elevated Insurance, dozens of the Farmers accounts that were identified in the "Account Summary Personal" reports Jasper accessed in the months immediately preceding the termination of the Agreement.

32. Jasper has continued to solicit, accept, and service Farmers' policyholders in violation of his contractual commitments to Farmers.

33. Farmers has made demand on Jasper to comply with the provisions of the Agreement, but Jasper wholly failed, refused, and neglected to comply with the terms and conditions of the Agreement.

## COUNT I
## Preliminary and Permanent Injunction
## (Against All Defendants)

34. Farmers realleges and incorporates by reference herein paragraphs 1 through 33.

35. Jasper was an agent of Farmers and, in his capacity as an agent, had access to certain confidential, proprietary, and trade secret information of Farmers.

36. Prior to his departure from Farmers, Jasper accessed, printed, and/or downloaded files containing the confidential, proprietary, and trade secret information of Farmers.

37. Subsequent to his departure from Farmers, Jasper began working with Elevated Insurance to engage in providing insurance services in direct competition with Farmers.

38. Upon information and belief, Jasper is currently employed by and/or has an agency relationship with Elevated Insurance.

39. Jasper is actively soliciting past and/or current Farmers' customers on behalf of Elevated Insurance.

40. Defendants are in possession of confidential, proprietary, and trade secret information of Farmers, including, but not limited to, information regarding Farmers' clients, customer preference, policy specific information, pricing, and renewal time periods.

41. Upon information and belief, Defendants have used and/or disclosed the confidential, proprietary, and trade secret information of Farmers to enable Elevated Insurance to lure Farmers' customers away from Farmers and to Elevated Insurance, and to otherwise provide Elevated Insurance with an unfair advantage in starting its operations.

42.	In the absence of injunctive relief, Farmers will suffer irreparable harm, including, but not limited to, loss of customers and clients, loss of customer confidence, disclosure of customer and client information to a competitive firm, loss of goodwill and business reputation, and unknown economic loss.

43.	Farmers has no adequate remedy at law.

44.	The potential harm to Farmers if Defendants are not enjoined is far greater than any harm Defendants may suffer if injunctive relief is not granted.

45.	Farmers is likely to prevail on the merits of its cause of action against Defendants.

46.	The public interest weighs in favor of granting injunctive relief.

47.	Because Farmers is without an adequate remedy at law for Defendants' actions:

    a.	Jasper (and all others acting in concert with him) should be preliminarily and permanently enjoined from further violations of the Agreement;

    b.	Jasper (and all others acting in concert with him) should be preliminarily and permanently enjoined from using or disclosing any of Farmers' trade secrets, confidential information, or customer information;

    c.	The restrictive covenants in the Agreement should be equitably extended for a length of time equal to the time that Jasper was in breach of the Agreement;

    d.	Defendants (and all others acting in concert with them), should further be ordered to return to Farmers all of Farmers' property in Defendants' possession.

### COUNT II
### Lanham Act (15 U.S.C. § 1125(a))
### (Against Jasper)

48.	Farmers realleges and incorporates by reference herein paragraphs 1 through 47.

49.	Jasper has retained possession of and is continuing to use the office telephone number [(314) 403-1744] that Jasper used while serving as an insurance agent for Farmers.

50. This telephone number was listed in advertising and directory publications as affiliated with Farmers.

51. The continued use of the telephone number by Jasper for other businesses has and will continue to cause confusion or mistake with respect to the affiliation, connection, or association between Farmers and Jasper (and/or his other affiliated businesses).

52. The confusion or mistake presents a significant risk to the sales, goodwill and/or reputation of Farmers.

53. The continued use of the telephone number by Jasper (or his other affiliated businesses) has damaged Farmers and will continue to damage Farmers.

## COUNT III
### Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*)
**(Against All Defendants)**

54. Farmers realleges and incorporates by reference herein paragraphs 1 through 53.

55. The files, data, and reports accessed, run, and/or printed by Jasper prior to the termination of his Agreement with Farmers, and subsequently disclosed to Elevated Insurance, are trade secrets of Farmers subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, et seq.

56. The information contained in these files and data is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. Farmers has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

57. The information contained in these files and data is related to products or services used in, or intended for use in, interstate commerce.

9

58. Farmers takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include, but are not limited to: (a) IT policies; (b) restricting availability of certain confidential information to key employees; and (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

59. Jasper obtained the information contained in these files and data by improper means in violation of his contractual and other obligations to Farmers.

60. Defendants' foregoing conduct constitutes an actual and threatened misappropriation and misuse of Farmers' trade secret information in violation of the DTSA.

61. Jasper improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) to Elevated Insurance the confidential business information, including customer specific policy information, contained in the files and data he took from Farmers without authorization to do so.

62. Jasper engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty he owed and continues to owe Farmers as former agents and representatives of Farmers.

63. As a direct and proximate result of Defendants' actual and threatened misappropriation of Farmers' trade secrets, Farmers has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Farmers.

64. As a direct and proximate result of Defendants' misappropriation, Farmers has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.

65. Each of the acts of misappropriation was done maliciously by Defendants, thereby entitling Farmers to exemplary damages to be proved at trial.

## COUNT IV
### Misappropriation of Trade Secrets in Violation of
### Mo. Rev. Stat. §§ 417.450-417.467
### (Against All Defendants)

66. Farmers realleges and incorporates by reference herein paragraphs 1 through 65.

67. The files, data, and reports accessed, run, and/or printed by Jasper prior to the termination of his Agreement with Farmers, and subsequently disclosed to Elevated Insurance, are trade secrets of Farmers subject to protection under Mo. Rev. Stat. § 417.453(4).

68. Farmers derives independent economic value from the information contained in these files and data because the information is not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

69. Farmers took reasonable precautions under the circumstances to protect its trade secrets and to maintain the secrecy of the files, data, and reports, and all parties with access to its trade secrets (including Jasper) were subject to obligations to maintain their secrecy.

70. Jasper obtained the information contained in these files and data by improper means in violation of his contractual and other obligations to Farmers.

71. Jasper improperly retained, used, and/or disclosed (and continue to retain, use, and/or disclose) to Elevated Insurance the confidential business information, including customer

specific policy information, contained in the files and data they took from Farmers without authorization to do so.

72. Jasper engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty he owed and continues to owe Farmers as a former agent and representative of Farmers.

73. Upon information and belief, Defendants willfully and maliciously misappropriated Farmers' trade secrets by, among other acts, using and disclosing Farmers' trade secrets without authorization (express or implied) at a time they knew or had reason to know they had a duty to Farmers to maintain the secrecy and confidentiality of the trade secrets.

74. As a direct and proximate result of Defendants' actual and threatened misappropriation of Farmers' trade secrets, Farmers has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Farmers.

75. As a direct and proximate result of Defendants' misappropriation of Farmers' trade secrets, Farmers has suffered damages.

76. The actions of Defendants as alleged in Count IV were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Farmers entitling Farmers to an award of punitive damages.

## COUNT V
## Breach of Contract
## (Against Jasper)

77. Farmers realleges and incorporates by reference herein paragraphs 1 through 76.

78. The Agreement (attached as Exhibit A) is an enforceable contract between Farmers and Jasper.

79. Jasper has breached the Agreement in that he has failed and refused to transfer and assign the telephone numbers used as an agent for Farmers.

80. Jasper has breached the Agreement in that he has used the confidential, proprietary and trade secret information of Farmers to solicit, switch and/or convert Farmers' insureds to other insurance carriers either directly or through Elevated Insurance, and/or has participated or assisted Elevated Insurance in soliciting, switching, and converting Farmers' insureds to other insurance carriers through Elevated Insurance by providing Elevated Insurance with access to files or information necessary to solicit, switch, and convert Farmers' insureds.

81. Jasper has breached the Agreement in that following the termination of the Agreement, he has directly or indirectly solicited, accepted, or serviced the insurance business of policyholders of record in his agency.

82. As a direct and proximate result of Jasper's breaches, Farmers has incurred damages.

## COUNT VI
## Breach of Fiduciary Duty
## (Against Jasper)

83. Farmers realleges and incorporates by reference herein paragraphs 1 through 82.

84. By virtue of its prior status as an insurance agent for Farmers, Jasper operated as a fiduciary with respect to Farmers' business and owed Farmers the fiduciary duties of loyalty and care and were required to keep the confidential and business secrets of Farmers inviolate.

85. Defendant Jasper has breached their fiduciary duties by engaging in misconduct that served his own self-interests and the interests of others rather than the interests of Farmers and has acted in a manner inconsistent with the best interests of Farmers.

86. This misconduct included falsifying documents to provide unlawful discounts to policyholders and commit fraud against Farmers; voiding new business check premium payments and failing to promptly remit monies due to Farmers; failing and refusing to transfer and assign the telephone numbers used as an agent for Farmers after his termination; relying on his knowledge and information obtained through his agency with Farmers to improperly solicit, accept, service, switch, and/or convert Farmers' insureds to other insurance carriers in order to unfairly compete against Farmers.

87. As a direct and proximate result of Defendant Jasper's breach of fiduciary duties, Farmers has incurred damages.

88. The actions of Defendant Jasper as alleged in Count VI were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Farmers entitling Farmers to an award of punitive damages.

### COUNT VII
### Breach of Duty of Loyalty
### (Against Jasper)

89. Farmers realleges and incorporates by reference herein paragraphs 1 through 88.

90. Defendant Jasper had and has a duty of loyalty to Farmers by virtue of his duty to act for the benefit of Farmers in matters connected with their contractual relationship with Farmers and by the special confidence reposed in them by Farmers in connection with his exposure, and access to Farmers' confidential information and confidential insured information.

91. Defendant Jasper breached his duty of loyalty owed to Farmers by his conduct in communicating with Farmers' insureds on behalf of himself and/or Elevated Insurance for the purpose of soliciting their services and otherwise competing with Farmers.

92. Defendant Jasper further breached his duty of loyalty by falsifying documents to provide unlawful discounts to policyholders and commit fraud against Farmers; voiding new business check premium payments and failing to promptly remit monies due to Farmers; and failing and refusing to transfer and assign the telephone numbers used as an agent for Farmers after his termination.

93. Defendant Jasper's breaches of the duty of loyalty have caused Farmers to suffer damages.

94. The actions of Defendant Jasper as alleged in Count VII were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Farmers entitling Farmers to an award of punitive damages.

## COUNT VIII
**Tortious Interference with Business Expectancy and Contractual Relations**
**(Against All Defendants)**

95. Farmers realleges and incorporates by reference herein paragraphs 1 through 94.

96. An insurance contract exists between Farmers and each of its insureds, including those insureds who were served by Jasper.

97. Defendant Jasper had actual knowledge of these insurance contracts between Farmers and its insureds by virtue of his prior status as insurance agents for Farmers.

98. Farmers has a valid business expectancy and contractual relations in connection with each of its insureds with whom, upon information and belief, Jasper has engaged in

15

communications with on behalf of himself and/or Elevated Insurance for the purpose of soliciting their services and otherwise competing with Farmers.

99. Upon information and belief, Jasper, on behalf of himself and/or Elevated Insurance, intentionally interfered with Farmers' business expectancy with respect to Farmers' insureds by contacting them to solicit their services away from Farmers.

100. Jasper had no justification for his intentional interference.

101. Farmers has suffered damages as a result of Defendants' conduct.

102. The actions of Defendants as alleged in Count VIII were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Farmers entitling Farmers to an award of punitive damages.

## COUNT IX
## Unjust Enrichment
## (Against All Defendants)

103. Farmers realleges and incorporates by reference herein paragraphs 1 through 102.

104. As a result of Defendants' misconduct as alleged in this Complaint, Defendants have been unjustly enriched through the continued use and retention of the telephone number of Jasper, and the solicitation, switching and converting of Farmers' insureds to other insurance carriers.

105. The retention of these benefits by Defendants under the circumstances is inequitable and, therefore, Defendants should be required to disgorge their wrongful gains.

106. The actions of the Defendants as alleged in Count IX were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of Farmers entitling Farmers to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs respectfully request the Court grant the following relief:

A.  The entry of a preliminary and permanent injunction enjoining Jasper (and all others acting in concert with him) from using or disclosing any of Farmers' trade secrets, confidential information, or customer information;

B.  The entry of a preliminary and permanent injunction requiring that Defendants (and all others acting in concert with them) return to Farmers all of Farmers' property in Defendants' possession;

C.  The entry of a preliminary and permanent injunction enjoining Jasper (and all others acting in concert with him) from otherwise violating the terms of the Agreement;

D.  The entry of a judgment ordering equitably extending the period of the restrictive covenants in the Agreement for a length of time equal to the time that Jasper has been in breach of the Agreement;

E.  Disgorgement of compensation paid to Jasper for his period of disloyalty;

F.  The entry of a judgment for monetary damages for Defendants' wrongful acts as are fair and reasonable, including actual damages, punitive damages, equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees;

G.  An award of such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/    James R. Holland*
James R. Holland, MO Bar # 47459
Laura Bailey Brown, MO Bar #62732
**FISHER & PHILLIPS, LLP**
4622 Pennsylvania Avenue, Suite 910
Kansas City, Missouri 64112

Phone: (816) 842-8770
Facsimile: (816) 842-8767
Email: jholland@fisherphillips.com
Email: lkbrown@fisherphillips.com

ATTORNEYS FOR PLAINTIFFS