UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FARMERS INSURANCE EXCHANGE )
et al., )
  )
      Plaintiffs, )
  )        Case No. 4:23-cv-00406-SRC
      v. )
  )
ANDREW JASPER et al., )
  )
      Defendants. )

## Memorandum and Order

After investigating Andrew Jasper's business practices, Farmers Insurance terminated its Agent Appointment Agreement with Jasper.  Around the same time, Jasper allegedly misappropriated Farmers' trade secrets and later solicited Farmers' insureds to terminate their policies and bring their business to Jasper's insurance agency instead.  And the allegations don't end there.  To recover, Farmers brings nine counts against Defendants Jasper; Jasper Insurance Agency, LLC; and Elevated Insurance Group, LLC.  Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6).  *See* doc. 20.

## I.    Background

The Court accepts the following well-pleaded facts as true for the purposes of this Motion to Dismiss.  This lawsuit arises from an Agent Appointment Agreement between Farmers and Jasper, under which Jasper served as a Farmers insurance agent in Missouri from approximately February 2018 to April 2022.  Doc. 1 at ¶¶ 8, 20.  Farmers terminated the agreement after an investigation of Jasper's business revealed that he was—among other things—submitting fraudulent documents on behalf of his insureds and issuing policies without the required down payment.  *Id.* at ¶¶ 13–20.  The agreement required Jasper, upon termination, to refrain from

soliciting or servicing Farmers' policyholders for one year and to transfer his interest in his telephone number to Farmers.  *Id.* at ¶¶ 10–11.  But in the months leading up to his termination, Jasper allegedly printed reports on a number of Farmers' insureds that were unrelated to his work, *id.* at ¶¶ 22–24, and has since used this information to solicit dozens of Farmers' policyholders to Elevated Insurance, Jasper's new insurance agency, *id.* at ¶¶ 30–32.  He also retained his Farmers telephone number.  *Id.* at ¶ 49.

Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively, Farmers) bring nine counts against Defendants Andrew Jasper; Jasper Insurance Agency, LLC; and Elevated Insurance Group, LLC.  Doc. 1.  Defendants move to dismiss all counts for failure to state a claim.  Doc. 20.

## II.    Standard

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  To meet this standard and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must make all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619

F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id.* at 679, 682.

## III.   Discussion

### A.      Count 1

In count 1 of its Complaint, Farmers seeks to bring a cause of action for injunctive relief. Doc. 1 at ¶¶ 34–47. But, quite simply, no such cause of action exists in either state or federal

court.  *See, e.g.*, *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. 2011), *abrogated on other grounds by Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778 (Mo. 2023) ("[A]n injunction is a remedy and not a cause of action; therefore, it must be based on some recognized and pleaded legal theory") (citation omitted); *Guardians Ass'n v. Civ. Serv. Comm'n of N.Y.C.*, 463 U.S. 582, 595 (1983) ("Whether a litigant has a cause of action 'is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive'" (quoting *Davis v. Passman*, 442 U.S. 228, 239 (1979))).  Farmers acknowledges as much in its response to Defendants' motion:  "Farmers agrees . . . that the remedy [i.e., the injunction] does not stand as a separate cause of action."  Doc. 26 at 15.  Therefore, the Court grants the Motion to Dismiss count 1.

### B.    Count 2

Against Jasper alone, Farmers seeks to bring a false-advertising claim under the Lanham Act, 15 U.S.C. § 1125(a), alleging that he has wrongfully used an office telephone number that he used during his time as an agent for Farmers.  Doc. 1 at ¶¶ 48–53.  The Act provides the following:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4

15 U.S.C. § 1125(a).

To establish a false-advertising or deceptively-misleading-advertising claim under section

1125(a), a plaintiff must show five elements:

> (1) a false statement of fact by [the defendant] about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004) (quoting

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).

Farmers has not adequately pleaded, or seriously attempted to argue, that its Complaint

satisfies the first two elements—and that alone disposes of the claim.  Doc. 26 at 3–4.  For

example, it has not alleged that Jasper has made any "false statement of fact" in connection with

the phone number or his product.  *Am. Italian Pasta Co.*, 371 F.3d at 390 (quoting *Clorox*

*Co.,* 140 F.3d at 1180); doc. 1 at ¶¶ 48–53.  Rather, Farmers asserts that "[t]he telephone number

is listed in advertising and directory publications as affiliated with Farmers."  Doc. 26 at 3.  But

Farmers never alleges or asserts that Jasper himself, after his termination, has made any

*statement* that the number is affiliated with Farmers.  Doc. 1.

Even assuming that Jasper's use of the telephone number amounted to a statement,

Farmers fails to satisfy the second element.  Generally, two categories of a "false statement"

establish a section-1125(a) violation:  (1) "claims that are literally false as a factual matter; and

(2) claims that may be literally true or ambiguous but which implicitly convey a false

impression, are misleading in context, or likely to deceive consumers."  *Clorox Co.*, 140 F.3d at

1180 (citations omitted).  For the second category, the party must prove actual deception, rather

than hypothetical deception.  *See Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d

1035, 1043 (8th Cir. 1999) ("Where advertising is not literally false, the plaintiffs bear 'the ultimate burden of proving actual deception by using reliable consumer or market research'" (quoting *Clorox Co.*, 140 F.3d at 1183)); *Clorox Co.*, 140 F.3d at 1183 ("[The party] cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually* do react" (emphasis in original) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1443 (3d Cir. 1994))).

Farmers' allegation falls into the second category, but it fails to show actual deception. Farmers asserts that Jasper's use of the phone number is "clearly misleading as insurance consumers, including Farmers' policyholders, could readily believe they are contacting Farmers by calling the number." Doc. 26 at p. 3. Further, Farmers alleges Jasper's continued use "is likely to cause confusion or mistake." *Id*. at 4. These claims amount to conjecture—not evidence of actual deception. Consequently, Farmers fails to satisfy the second element. Accordingly, the Court grants the Motion to Dismiss count 2.

## C.    Counts 3 and 4

Against all Defendants, Farmers alleges misappropriation of trade secrets under the federal Defend Trade Secrets Act (count 3) and the Missouri Uniform Trade Secrets Act (count 4). Doc. 1 at ¶¶ 54–76. "Because these statutes are essentially identical, [the Court] can analyze the claims together." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023). "To demonstrate misappropriation of trade secrets, [Farmers] must show, among other things, [1] the existence of a protectable trade secret and [2] misappropriation of that trade secret." *Id.* (quoting *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020)).

The federal statute defines "trade secret":

(3) . . . all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3); *see also* Mo. Rev. Stat. § 417.453(4).  In short, qualifying information constitutes a trade secret if: (1) the owner has taken reasonable measures to keep it secret and (2) the information derives independent economic value from it not being generally known.

18 U.S.C. § 1839(3); *see also* Mo. Rev. Stat. § 417.453(4).

Further, the statutes define "misappropriation" similarly:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the

7

> trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that—
>
>> (I) the trade secret was a trade secret; and
>>
>> (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5); *see also* Mo. Rev. Stat. § 417.453(2).  The Court concludes that Farmers has plausibly alleged both elements—i.e., the existence of protectable trade secrets and misappropriation of those trade secrets—and has therefore stated a claim under both the federal and Missouri trade-secrets acts.

### 1.    Protectable trade secrets

First, Farmers adequately alleges that the reports that Defendants purportedly misappropriated contain trade secrets.  Farmers identifies several steps it takes to keep this information secret.  Doc. 1 at ¶ 58; *see* 18 U.S.C. § 1839(3)(A).  Those steps include IT policies and security measures, such as password protection for all computers and segregation of certain files so that only employees needing access to the files can access them.  Doc. 1 at ¶ 58.  Farmers further restricts the availability of certain confidential information to key employees, *id.*, and alleges the Agent Appointment Agreement obligated Jasper to maintain the confidentiality of information pertaining to Farmers' policyholders, Doc. 1 at ¶ 12.

Defendants argue that Farmers has taken insufficient steps to protect its policyholders' information.  Doc. 21 p. 8.  They assert that Farmers' IT policies and security measures do not amount to "reasonable measures to keep [the] information secret," 18 U.S.C. § 1839(3)(A)—but they offer no explanation or legal support for that that assertion.  *Id.*  Given the measures previously described, the Court rejects this argument.  *See Ahern*, 59 F.4th at 955 (finding that

where plaintiff required non-disclosure and non-competition agreements, plus had policies prohibiting disclosure of confidential information, plaintiff adequately alleged "reasonable measures.").

Second, Farmers' non-public information plausibly derives "independent economic value" from "not being generally known." 18 U.S.C. § 1839(3)(B).   The information includes customer lists, policies serviced by Jasper, account types, account statuses, pricing, premium values, information about quotes, and policy expiration dates.  Doc. 1 at ¶¶ 22–23.  In *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, the Eighth Circuit held that a mortgage servicer's lead sheets and customer files constituted trade secrets because "through possession of these loan files, [the servicer] is in a unique position of being able to analyze its customers' specific financial needs and identify those current customers who may need additional . . . financial services." 381 F.3d 811, 818–19 (8th Cir. 2004).  Because the information at issue here plausibly allows Farmers to analyze and service its customers' needs in ways unavailable to those without the information, it—like the information at issue in *Conseco*—plausibly derives independent economic value from its not being generally known.  *Id.*

Defendants argue that the documents do not contain trade secrets by understating their contents as "mere customer lists, requirements, and related data."  Doc. 21 at 7.  They cite cases for the proposition that customer *contacts* do not merit trade-secret status.  *Id.*; *see, e.g.*, *Tension Envelope Corp. v. JBM Envelope Co.*, No. 14-567-cv-W-FJG, 2015 WL 893242 (W.D. Mo. Mar. 3, 2015), *aff'd*, 876 F.3d 1112 (8th Cir. 2017).  But the allegedly stolen information here goes well beyond mere customer contacts because much of it, as noted, is not publicly accessible, contains other sensitive data like pricing and quote information, and would not have been obtainable without Defendants' misappropriation of it.  *See* doc. 1 at ¶ 23.

9

And in any event, the *Tension* case is of little use to Defendants because there, the court faulted the plaintiff for not having the defendant sign a non-compete agreement. 2015 WL 893242 at *8. Here, by contrast, Farmers included a non-compete clause in its agreement with Jasper. Doc. 1 at ¶ 11. Accordingly, Farmers plausibly alleges the existence of protectable trade secrets under the federal and Missouri acts. *See Ahern*, 59 F.4th at 955.

### 2.      Misappropriation

Farmers must also—and does—adequately allege misappropriation. *Id.* (quoting *MPAY Inc.*, 970 F.3d at 1016); *see also* 18 U.S.C. § 1839(5); Mo. Rev. Stat. § 417.453(2). The Complaint states that Jasper acquired trade secrets improperly when he "accessed Farmers' secure computer system to run and print various reports on insureds" for reasons "unrelated to his servicing of the insured[s] by and for Farmers." Doc. 1 at ¶ 22. He did this the same day Farmers told him it had begun investigating his agency, of which he is currently the only member. *Id.* at ¶¶ 5, 17, 22. Farmers lists a number of examples of the type of information Jasper accessed, including "reports titled 'Accounts by Inception with Annual Premium,' which identified all policies serviced by Jasper by inception date, account type, account status, the policy's annual premium, years active, the lead source, [and] the line of business" *Id.* at ¶ 22.

Since his termination, Jasper has allegedly solicited, accepted, and/or serviced the owners of dozens of these specific accounts on behalf of Elevated Insurance. *Id.* at ¶ 31. He has refused to return the proprietary information throughout this period. *Id.* at ¶ 29. Therefore, Farmers alleges that "upon information and belief, Defendants have used and/or disclosed the confidential, proprietary, and trade secret information of Farmers to enable Elevated Insurance to lure Farmers' customers away." *Id.* at ¶ 41; *see also Ahern*, 59 F.4th at 954 ("[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief where the

proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible.").  The success of Farmers' claims ultimately depends on the evidence, but for now, these allegations taken together constitute far more than what Defendants refer to as "mere conclusionary recitations of the elements of their claims."  Doc. 34 at 2.

Drawing all inferences in Farmers' favor, *Lustgraaf*, 619 F.3d at 872–73, the Court concludes that Farmers has plausibly stated a claim for misappropriation of trade secrets.  *See Conseco*, 381 F.3d at 820 (holding that plaintiffs proved misappropriation by demonstrating that former employees took files containing sensitive information from the company's offices and made copies of customer loan files before resigning).  Accordingly, the Court denies the Motion to Dismiss counts 3 and 4.  And because Farmers states a federal cause of action (count 3), the Court retains supplemental jurisdiction over the related state-law claims.  *See* 28 U.S.C. § 1367.

### D.    Count 5

Farmers also brings a breach-of-contract claim against Jasper only.  Doc. 1 at ¶¶ 77–82.  To recover on a breach-of-contract theory, a plaintiff must prove:  (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.  *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).  Jasper argues that Farmers has not sufficiently pleaded the second element because it has not alleged that it fulfilled its contractual obligations.  *See* doc. 21 at 8.  To the contrary, Farmers has pleaded facts allowing the reasonable inference that Farmers has satisfied each element, including performance under the contract:  Farmers alleges that it executed the contract and appointed Jasper as an agent from February 1, 2018, to April 27, 2022.  *See* doc. 1 at ¶¶ 3, 8–21.  Farmers also lists material terms of the contract and

describes the parties' conduct under the terms of the contract.  *Id.* at ¶¶ 8–12; *see generally id.*

Accordingly, Farmers has plausibly stated a claim for breach of contract, and the Court denies

the Motion to Dismiss count 5.

      **E.**    **Count 6**

      Against Jasper only, Farmers also brings a breach-of-fiduciary-duty claim (count 6).

Doc. 1 at ¶¶ 83–88.  To state a claim for breach of fiduciary duty under Missouri law, Farmers

must show: (1) a fiduciary relationship existed; (2) breach; (3) causation; and (4) harm.

*Preferred Physicians Mut. Mgmt. Grp. V. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d

805, 810 (Mo. Ct. App. 1996).

> Under Missouri law, a fiduciary relationship typically consists of five elements:
>
> (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998) (citing *Matlock*

*v. Matlock,* 815 S.W.2d 110, 115 (Mo. Ct. App. 1991)).  But a fiduciary relationship may still

exist absent the above elements.  *Id.*  "A fiduciary relationship may arise as a matter of law by

virtue of the parties' relationship . . . or it may arise as a result of the special circumstances of the

parties' relationship where one places trust in another so that the latter gains superiority and

influence over the former."  *Id.* (quoting *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d

940, 945 (Ill. App. Ct. 1994)).

      The principal-agent relationship stands as one legal relationship "universally recognized

as being fiduciary in nature."  *Id.*  "An agent is a fiduciary with respect to matters within the

scope of his agency." *Preferred Physicians*, 918 S.W.2d at 811 (citing *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351, 353 (Mo. 1993) (en banc)).  "Once an agency relationship has been established, a fiduciary relationship arises as a matter of law."  *A.G. Edwards*, 978 S.W.2d at 395.

    Apart from agent status, Missouri law indicates that an independent contractor may share a fiduciary relationship with an appointing party.  *See, e.g.*, *Bossaler v. Red Arrow Corp.*, 897 S.W.2d 629, 630–31 (Mo. Ct. App. 1995) ("[A]n independent contractor may have a fiduciary relationship with the contractor if the contract contains terms that create that relationship.  The provisions of the contract, not the legal status of the parties, control the nature of the relationship.").

    Farmers has not stated a claim for breach of fiduciary duty because the Complaint does not allow the reasonable inference that a fiduciary relationship existed.  Farmers fails to provide sufficient factual matter to support this claim.  *See Iqbal*, 556 at 678.  Rather, Farmers provides a conclusory statement, which the Court cannot credit.  *See id.*; doc. 1 at ¶ 84 ("By virtue of its [sic] prior status as an insurance agent for Farmers, Jasper operated as a fiduciary . . . and owed Farmers the fiduciary duties of loyalty and care").  Farmers argues that it properly pleaded the existence of an agency relationship, doc. 26 at 11, but "[m]erely calling an insurance seller an agent does not mean the seller is an agent in the legal sense." *Parshall v. Buetzer*, 195 S.W.3d 515, 519 (Mo. Ct. App. 2006).  "A person who sells insurance is commonly called an 'agent,' but 'agent' is a legal term of art."  *Id*.  Farmers fails to provide any facts to allow the reasonable inference of agency and a fiduciary relationship.  Accordingly, the Court grants the Motion to Dismiss count 6.

F.      **Count 7**

For similar reasons, Farmers' claim against Jasper for breach of the duty of loyalty

(count 7) also fails.  Under common law, the duty of loyalty originated as "an implied contract or

promise" binding an employee.  *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols.,*

*Inc.*, 642 S.W.3d 281, 289–90 (Mo. 2022).  Typically, Missouri law distinguishes between an

employee and independent contractor.  *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157,

161–62 (Mo. Ct. App. 2000).  Even so, an independent contractor may also owe a duty of

loyalty.  *See Skidmore v. Haggard*, 110 S.W.2d 726, 730 (Mo. 1937) ("[non-employee] is

'subject to the fiduciary dut[y] of loyalty' . . . by 'agreeing only to use care and skill to

accomplish a result'" (quoting *Restatement (First) of Agency* § 220 cmt. c (1933))).

Farmers' count 7 fails because Farmers fails to allege facts establishing that Jasper owed

a duty of loyalty.  First, the Court cannot draw the inference that Jasper qualified as an

"employee."  Indeed, the Agent Appointment Agreement expressly disclaims an employer–

employee relationship: "Nothing contained herein is intended or may be construed to create the

relationship of employer and employee."  Doc. 1-1 at 6.  Second, Farmers fails to allege that

Jasper agreed to a duty of loyalty as an independent contractor.  Although Farmers points to the

parties' "contractual relationship" in the Complaint, doc. 1 at ¶ 90, it fails to allege how the

contract created a duty of loyalty.  Once again, Farmers provides a conclusory statement, rather

than sufficient factual matter, to support this claim.  *See Iqbal*, 556 at 678.  Accordingly, Farmers

has not stated a claim for breach of the duty of loyalty.  The Court grants the Motion to Dismiss

count 7.

G.      **Count 8**

Farmers brings claims for tortious interference with a contract and for tortious

interference with a business expectancy against all Defendants.  Doc. 1 at ¶¶ 95–102.  The

distinction between the two claims "is real, and not merely a matter of semantics."  *Rail*

*Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 264 (Mo. Ct. App.

2017).  Under Missouri law, "[t]ortious interference with a contract or business expectancy

requires proof of:  (1) a contract or valid business expectancy; (2) defendant's knowledge of the

contract or relationship; (3) a breach induced or caused by defendant's intentional interference;

(4) absence of justification; and (5) damages."  *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316

(Mo. 1993).   As between the two claims, only the first two elements differ.  Because the parties

do not dispute, and Farmers sufficiently pleads, the first two elements, the Court analyzes the

claims together.

As an initial matter, Defendants argue that, according to the pleadings, only Jasper—not

Entity Defendants (Jasper Insurance Agency and Elevated Insurance)—took affirmative steps,

under the third element, to induce policyholders to leave Farmers.  Doc. 21 at 12.  Plaintiffs do

not argue—nor does the Complaint allege—otherwise.  *See* docs. 1, 26.  So Farmers fails to state

a claim against Entity Defendants, *see Nazeri*, 860 S.W.2d at 316, and the Court dismisses Count

8 as to Entity Defendants.  That leaves Jasper himself.

As to Jasper, Defendants argue that Farmers has not sufficiently pleaded the third

element—i.e., a breach caused or induced by Jasper's interference.  Doc. 21 at 11.  The Court

can draw the inference that Farmers' policyholders did breach their contracts because Jasper

allegedly has been "servic[ing]" "dozens" of Farmers' former policyholders since Farmers

terminated his agent agreement.  Doc. 1 at ¶ 30.  The question becomes whether Jasper's

interference plausibly *caused* those alleged breaches under the but-for causation test that

Missouri courts apply to the third element of tortious-interference claims.  Under this test, the

Court asks: "1) did [Jasper] actively and affirmatively take steps to induce the breach; and if so, 2) would the contracts have been performed absent [Jasper's] interference?" *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 93–94 (Mo. Ct. App. 2000) (quoting *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. 1990)).  The Court can draw the inference that Jasper took affirmative steps to induce the breach when he began "solicit[ing]" Farmers' policyholders, doc. 1 at ¶¶ 30–32, and that the policyholders would have performed their contracts with Farmers absent Jasper's interference, *see Iqbal*, 556 U.S. at 679, 682 (directing courts to "draw on [their] judicial experience and common sense.").  Farmers has pleaded sufficient facts in support of the third element.

Defendants finally argue that Farmers has not sufficiently pleaded the fourth element, "absence of justification."  Doc. 21 at 11–12.  "A defendant's conduct is without justification when the defendant uses 'improper means' to further his interests and to the plaintiff's detriment."  *SEMO Servs., Inc. v. BNSF Ry. Co.*, 660 S.W.3d 430, 439 (Mo. Ct. App. 2022) (quoting *Nazeri*, 860 S.W.2d at 317).  "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."  *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. 2017) (citing *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. 2012)).  As the Court has already established, Plaintiffs have sufficiently pleaded Jasper's misappropriation of trade secrets—a "wrongful act recognized by statute."  *See id.*  Farmers has pleaded sufficient facts in support of the fourth element.  As to the fifth element, the Court can draw the reasonable inference that Farmers has suffered damages.  *See* doc. 1 at ¶¶ 30–32, 101.

Accordingly, as to Entity Defendants only, the Court grants the Motion to Dismiss count

8.  Because Farmers does state claims for tortious interference with business expectancy and with contractual relations against Jasper, the Court denies the Motion to Dismiss count 8 as to Jasper individually.

###### H.      Count 9

Farmers finally brings an unjust-enrichment claim against all Defendants.  Under Missouri law, "[a]n unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which retention of the benefit, without paying its reasonable value, would be unjust." *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003) (citing *Woods v. Hobson,* 980 S.W.2d 614, 618 (Mo. Ct. App. 1998)).  For an unjust-enrichment claim, plaintiffs must show that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (citation omitted).  For the third element, "[t]here must be some [sic] something more than passive acquiescence, such as fault or undue advantage on the part of the defendant, for defendant's retention of the benefit to be unjust." *S & J*, 108 S.W.3d at 768 (citing *Graves v. Berkowitz,* 15 S.W.3d 59, 64 (Mo. Ct. App. 2000)).  Further, if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

The Court first addresses the unjust-enrichment claim against Jasper himself and notes at the outset that an express contract governs "the very subject matter for which [Farmers] seeks recovery." *Howard*, 316 S.W.3d at 436; *see* Doc. 1-1 at 6 ("Agent agrees . . . to execute an assignment of any and all interests obtained incidental to this agreement, including . . . any

interest in the telephone . . . numbers . . . used in connection with the appointment and Agency"). The parties agree.  *See* Doc. 1 at ¶ 28 ("In violation of paragraph K. 3. of the Agreement, Jasper has refused to transfer and assign his telephone number to Farmers."); Doc. 21 at p. 13 ("Plaintiffs' unjust enrichment claim, as pleaded, is premised on a contract").

In *Affordable Communities of Missouri v. Federal National Mortgage Association*, the Eighth Circuit affirmed the district court's dismissal, at the motion-to-dismiss stage, of a Missouri unjust-enrichment claim where "the resolution of [the] case depend[ed] on the district court's interpretation" of the contractual provision at issue.  714 F.3d 1069, 1077 (8th Cir. 2013); *see also Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843 (8th Cir. 2014) (affirming dismissal of Missouri unjust-enrichment claim because "[t]here can be no unjust enrichment claim . . . where an express contract exists.").  Just so here.  Because Farmers' recovery against Jasper, if any, as it relates to the phone number depends upon the Court's interpretation of the relevant provision of the agent-appointment contract, "[e]quitable relief is . . . unavailable." *Affordable Cmties. of Mo.*, 714 F.3d at 1077 (citing *Howard*, 316 S.W.3d at 436).  Therefore, as to Jasper, the Court dismisses Farmers' unjust-enrichment claim.

The same cannot be said of Entity Defendants.  Farmers does not allege an express contract between Farmers and either of Entity Defendants.  Doc. 26 at 14.  So the above limitation does not apply to them.  But Defendants still argue—for two main reasons—that the Court should dismiss Farmers' unjust-enrichment claim.

First, Defendants argue, "any benefit the Entity Defendants enjoyed was conferred upon it [sic] indirectly via *Jasper*, not [Farmers] themselves [sic]."  Doc. 21 at. 13 (emphasis in original).  Further, Defendants state that Farmers' Complaint "consists only of the type of 'passive acquiescence' that does not sustain a claim."  Doc. 34 at 9 (citing *S & J*, 108 S.W.3d at

769).  But Defendants' reliance on *S & J* is misplaced.

Defendants conflate a passive beneficiary and an indirect beneficiary.  The passive-acquiescence language in *S & J* comes from *Graves v. Berkowitz*.  *See S & J*, 108 S.W.3d at 768 (citing *Graves,* 15 S.W.3d at 64).  In *Graves*, a contractor sued two landlords for unjust enrichment after the landlords' tenant entered into and breached a contract with the contractor. 15 S.W.3d 59.  The court deemed the landlords passive beneficiaries.  *Id*. at 64.  But while the court held that a contractor cannot hold a passive-beneficiary landlord liable for unjust enrichment, the court did not hold that every indirect beneficiary is immune to an unjust-enrichment claim.  *Id*.  In fact, a contractor can succeed on an unjust-enrichment claim against a non-contracting landlord if there is "some fault or undue advantage on the part of the landlord, or some agency relationship between the tenant and the landlord—something more than passive acquiescence . . . ."  *Id*; *see also Webcon Grp., Inc. v. S.M. Properties, L.P.*, 1 S.W.3d 538 (Mo. Ct. App. 1999) (affirming use of unjust enrichment against a non-contracting landlord).

Defendants point to no authority requiring a direct conferral for an unjust-enrichment claim.  And Missouri caselaw indicates the opposite—an indirect beneficiary may be something more than a passive beneficiary.  *See Webcon*, 1 S.W.3d 538.  Further, Farmers alleges facts regarding Entity Defendants going beyond *Graves*'s passive-beneficiary landlord:  "Jasper is the sole [m]ember of Jasper Insurance Agency," doc. 1 at ¶ 5; "Jasper has solicited, accepted, and/or serviced on behalf of his new agency, Elevated Insurance, dozens of the Farmers accounts," *id*. at ¶ 31; "Defendants have used and/or disclosed the confidential, proprietary, and trade secret information of Farmers to enable Elevated Insurance to lure Farmers' customers away," *id*. at ¶ 41; and "Jasper . . . assisted Elevated Insurance in soliciting, switching, and converting Farmers' insureds to other insurance carriers through Elevated Insurance by providing Elevated

19

Insurance with access to files or information necessary to solicit, switch, and convert Farmers' insureds," *id*. at ¶ 80.  With these allegations, the Court cannot say that, as a matter of law, Farmers' unjust-enrichment claim against Entity Defendants fails.

Second, Defendants argue, "Plaintiffs fail to allege that *any* benefit was conferred upon the Entity Defendants."  Doc. 21 at 13 (emphasis in original).  But Farmers identified both the telephone number, doc. 1 at ¶ 104, and customer information, *id*. at ¶ 80, as benefits.  Defendants fail to point to any authority limiting the type of benefit needed for an unjust-enrichment claim.  And since the Court liberally construes the Complaint in favor of Farmers, *see Huggins*, 592 F.3d at 862, the Court rejects this argument.  Again, at this stage, the Court cannot say that, as a matter of law, Farmers' unjust-enrichment claim against Entity Defendants fails.

Accordingly, as to Jasper only, the Court grants the Motion to Dismiss count 9.  But because Farmers does state unjust-enrichment claims against Entity Defendants, the Court denies the Motion to Dismiss count 9 as to Entity Defendants.

## I.       Preemption

Defendants alternatively argue that the Missouri Uniform Trade Secrets Act preempts counts 1, 5, 6, 7, 8, and 9.  Doc. 34 at 7–8.  Because the Court fully dismisses counts 1, 6, and 7 on other grounds, the Court turns to whether the Act preempts the remaining common-law claims (counts 5, 8, and 9).  The Act "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret."  Mo. Rev. Stat. § 417.463.1.  Though Missouri state courts have yet to analyze this provision, federal courts in Missouri have consistently interpreted it to preempt common-law claims that "are based on facts related to the misappropriation of trade secrets claim."  *Reliant Care Mgmt, Co. v. Health Sys.*, No. 4:10-cv-00038-CDP, 2011 WL 4369371, at *3–4 (E.D. Mo. Sept. 19, 2011) (collecting

20

cases).  "The crucial question is whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret appropriation."  *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08-cv-1719-JCH, 2010 WL 1691454, at *2 (E.D. Mo. Apr. 27, 2010) (internal citations omitted).

Although Farmers' common-law claims may derive from Plaintiffs' claim under the Act, "the Court has not determined as a matter of law that the underlying information qualifies as a trade secret.  Until that time, it would be premature to find that [Farmers'] claims [are] pre-empted by the MUTSA."  *US Polymers-Accurez, LLC v. Kane Int'l Corp.*, No. 4:17-cv-2371-RLW, 2018 WL 4491168, at *2 (E.D. Mo. Sept. 19, 2018) (citing *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010)); *see also LifeScience Techs., LLC v. Mercy Health*, No. 4:21-cv-01279-SEP, 2022 WL 4547002, at *7 (E.D. Mo. Sept. 29, 2022) (finding it premature to dismiss claims based on preemption at the motion-to-dismiss stage).

Defendants, citing *Leggett & Platt, Inc. v. Hollywood Bed & Spring Manufacturing Co.*, argue that disposal of preempted claims at the motion to dismiss phase is proper.  No. 20-05010-cv-S-BP, 2020 WL 13580657, at *6 (W.D. Mo. May 15, 2020).  In *Leggett*, however, Chief Judge Phillips of the Western District of Missouri dismissed a common-law misappropriation claim because it failed regardless of whether the information at issue qualified as a trade secret: if so, then the Act preempted the common-law misappropriation claim, and if not, then the common-law misappropriation claim would have no legal basis.  *Id.*  Here, however, the supposedly preempted claims could still succeed even if count 4 fails.  Therefore, the Court does not dismiss counts 5, 8, and 9 on preemption grounds at this stage.

IV.     **Conclusion**

Accordingly, the Court grants Defendants' [20] Motion to Dismiss as to count 1 (injunction), count 2 (Lanham Act), count 6 (breach of fiduciary duty), and count 7 (breach of the duty of loyalty).  The Court further dismisses count 8 (tortious interference) as to Entity Defendants only and count 9 (unjust enrichment) as to Jasper only.  The Court denies the [20] Motion to Dismiss as to count 3 (Defend Trade Secrets Act), count 4 (Missouri Uniform Trade Secrets Act), count 5 (breach of contract), count 8 (tortious interference) as to Jasper only, and count 9 (unjust enrichment) as to Entity Defendants only.

The Court also denies Farmers' informal request for leave to amend their Complaint.  *See Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006) (explaining that a district court does not abuse its discretion in denying leave to amend when plaintiff raises a "one-line request in his brief opposing defendants' motion to dismiss"); *see also* Judge's Requirements at 3.

So ordered this 1st day of November 2023.

SL R. Cl

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE